## PELTIER GLASS CO. v. AKRO–AGATE CO.

Circuit Court of Appeals, Seventh Circuit.
April 8, 1929.

Rehearing Denied June 12, 1929.

No. 4089.

Wallace R. Lane and James Hamilton Lewis, both of Chicago, Ill. (Edward A. Lawrence, of Pittsburg, Pa., and Lester J. Horan, of Ottawa, Ill., on the brief), for appellant.

Clarence D. Kerr, of New York City, for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. The District Court found that defendant-appellant (called defendant) had infringed claims 1, 2, and 3 of Hill patent, No. 1,164,718, for "machines for manufacturing spherical bodies," issued December 21, 1915, on application filed November 23, 1914, being a continuation of application filed September 19, 1912.

Below is Figure 1 of the Hill patent:

Defendant's two rolls have the same helical grooves from end to end. An end view of the rolls of the Hill patent, of defendant's machine (Miller patent, No. 1,601,699) and of the Christensen patent, No. 802,495, are here shown:

Figure 3 Hill.

Figure 3 Miller.

Figure 6 Christensen.

The Christensen invention and use figure prominently in this controversy. The forming parts of Christensen (patented in 1905) consist of two pulleys, or rolls, with a single groove around the periphery of each.

The only use of the machines has been for making glass marbles. In practice, a gob of molten glass, large enough to make a marble, is placed in the groove between the rolls. In Hill and defendant, it is placed at the end indicated by *20ª* in Hill Figure 1, and when the helical groove has carried it to the other end of the roll it is a finished marble. In Christensen, the material is kept between the two opposed rolls until it is a finished marble.

As shown in the figures, the rolls in each machine are placed close to each other, but do not touch. They are rotated in the same direction, but at the passing point between them they are moving in opposite directions. In Christensen, the larger roll turns downwardly at a greater peripheral speed than the smaller roll turns upwardly. In Hill, the larger roll moves upwardly at a greater peripheral speed than the downwardly moving smaller roll.

It is claimed that Hill made his up-turning roll with a greater diameter than the down-turning roll because he discovered that it was necessary to hold material at what he called the "working point" by neutralizing the action of gravity, upon the material being worked, through a greater speed in the upturning roll; that otherwise the material would be drawn down so that it would drop through the open space between the rolls or be ground into pieces by them.

The other thing claimed for the Hill invention is that it first introduced into a marble-making machine the helical groove, which pushes the material from one end of the roll to the other and turns it upon many axes, thereby making a more perfect sphere than is made where the material is rotated on a single axis.

In considering the Hill invention, we must consider the influence, if any, of the Christensen invention and use. The District Court rejected the evidence of use as insufficient to show anticipation. We are not able to accept that conclusion.

Seven men, in no way connected with defendant, but working in different lines of business in Akron, Ohio, were called by defendant and testified through depositions, in substance, as follows:

That Christensen, the inventor, and his son, as M. F. Christensen & Co., operated a factory at Akron, Ohio, from about 1905 until 1917, when the factory was closed down because of the failure of the gas supply; that they were employed in that factory, some from the time it started until 1915, and others for various periods; that they were engaged in the manufacture of marbles by machinery. One man, who was there during nearly the whole period, said that he operated one machine during all that time, and that Defendant's Exhibit A was a Christensen machine, or was similar to it. Other witnesses positively identified Exhibit A as a Christensen machine used in that factory. Those witnesses further testified that the machines used were so geared that the smaller up-turning roll had a higher peripheral speed than the larger down-turning roll, that being accomplished by putting a smaller sprocket on the shaft carrying the up-turning roll, and that the purpose was to keep the material being worked from jumping in the rolls, and from being dropped down between them. It was also testified that Hill, the inventor of plaintiff's machine, was for a number of years employed at the factory as office manager and bookkeeper, and was frequently out in the factory. Hill is dead. That same evidence shows that another former employé, Stahl, who said he was in the employ of plaintiff, interviewing his former fellow workmen, induced them to go to the shoe store of Mr. Marsh, plaintiff's president, in Akron, Ohio; some of the seven witnesses being among them, and that, while there, they saw what was said to be a Christensen machine; that Schwarz, plaintiff's expert witness, Marsh, Stahl, and others, were present. Although there are some discrepancies in the testimony, we do not think that there is anything to make it unworthy of belief. It is suggested that the testimony does not represent their recollection as to facts, but is the result of suggestions made to the witnesses by interested parties. For this, we find no justification in the record.

These witnesses are corroborated by circumstances, and plaintiff had at its command evidence to contradict much that was material in that testimony, if it was false. If Stahl, who lived in Akron, was not, as they said, a former employé of Christensen & Co., or if the witnesses had not told the truth as to the time and character of the operations of the machines, and as to the identity of Exhibit A, Stahl could have been used to establish the falsity of those matters. Stahl borrowed from the Christensen heirs, and took from the old Christensen factory, one of the Christensen machines. Whether that was the machine seen by the witnesses at the Marsh shoe store does not appear, but Marsh, upon the

witness stand, himself testified that Christensen & Co. made marbles by machinery prior to the war and identified Exhibit A as a machine so used by them. If the machine at the Marsh shoe store was not a Christensen machine, and if it had not been there said to the witnesses that it was, Marsh, Stahl, and Schwarz could have contradicted the witnesses as to those matters. Schwarz, plaintiff's expert witness, said that the only difference between the machine of the Christensen patent and that identified as the machine of the Christensen use was in the sprockets. Exhibit A shows that it was geared in the manner testified to by the witnesses. If the machine at the Marsh store was not so geared, plaintiff could easily have shown that fact.

We are of opinion that the evidence clearly establishes use, for much more than two years prior to the Hill invention, of Exhibit A, and that Exhibit A, so used, is the machine of the Christensen patent, with the single exception that there was a change in the size of the sprockets, as testified to, and consequently of the relative speed of the rolls.

In his original specification, Hill appropriated much that was in the Christensen specification, so that the words which describe the Christensen invention became, to a large extent, the words that describe the Hill invention. How much Hill learned of the Christensen use while he was in the factory is not known, but he made two changes from the Christensen machine and its use:

(a) He changed in his machine the position of the rolls, as shown in the Christensen patent, and the larger down-turning roll of Christensen became the larger up-turning roll in Hill, so that, whereas in the Christensen use the greater peripheral speed was caused by a greater angular speed, Hill got the greater peripheral speed by means of the greater diameter and periphery of his up-turning roll.

(b) Hill lengthened out his rolls, and instead of using one or more straight peripheral grooves, he wound a screw thread around the rolls from end to end, making a helical groove, in the description of the dimensions of which he used the exact words of the Christensen patent.

The Hill rolls faced each other in the same horizontal plane and in the same relation as shown in the Christensen patent and use, except as to the change shown in (a). The shaping of the material into a marble was done by and between the sides of the smooth grooves of the Christensen and Hill machines in identically the same manner, except that Hill's was a helical groove and Christensen's a straight one.

But it is claimed by plaintiff that out of the change in the position of the rolls and the use of the helical groove came the force that holds the material at the working point and turns it over and over on different axes.

Hill's claim 1, as first filed, except as to the first line, which is immaterial here, and except as to the words underscored below, is identical with claim 1 of the Christensen patent. It is:

"Claim 1. In a machine for manufacturing balls or other bodies, a pair of oppositely arranged cylinders[1] having *helical peripheral*[2] grooves less than a semicircle in cross section in their forming portions, said grooves being outwardly flared at each side next to their forming portions and having an unbroken curvature from the groove into the flared portion."

That claim was rejected in the Patent Office on Christensen, and the Patent Office later said:

"It is not believed that any essential difference in action between the devices would result from making the grooves spiral."

Plaintiff acquiesced in that rejection without appeal. After the rejection of that claim 1, it was canceled by Hill, and a new claim 1 was filed, being the claim 1 now in suit, with the exception that the word "rolls" has been substituted for the word "cylinder." Claim 1, which is typical of the three claims in suit, reads:

"In a machine for manufacturing spherical bodies, a pair of oppositely arranged rolls having helical peripheral grooves, and means for simultaneously rotating said rolls to move same upwardly and downwardly at their working points, respectively, with the roll moving upwardly at its working point having a greater peripheral speed than the roll moving downwardly at its working point."

Although the workmen did not use the word "gravity," it seems quite clear that if Hill neutralized the action of gravity, as it is claimed he did, and thereby established his so-called working point, he did nothing more than the witnesses said was done in the Christensen use, that is, he held the material at a place where it would be properly acted upon by the rolls, and not permitted to drop through the space between the rolls or be ground into pieces by them. In both the Hill and the Christensen use that thing was

---

[1] "Rolls" in Christensen.

[2] Not in Christensen.

accomplished by the faster speed of the up-turning roll. Except as a means of getting greater peripheral speed, without increasing the angular speed, the size of the roll had nothing to do with accomplishing the purpose.

In the specification of the Christensen patent, it is said, with reference to the turning of the material over on different axes:

"In this operation I have found that with two opposed segmental surfaces traveling reversely, as in this instance, and with space intervening the segments where no work can be done, the material is not rolled over and over in one direction only, as would seem probable, but the very fact that it is uneven of surface or not perfectly round to begin with causes it to engage or adhere more at one place than at another and to turn or to be turned in different directions and ways until it is equally exposed all around to the formative action of the rollers, * * * and a perfect sphere is produced."

That statement is supported not only by the testimony of the workmen, but by the statement of Hill, in his original specification, where, although it is claimed that the helical grooves do contribute to roll the material over and over on different axes, he also says:

"The fact that the material as fed to the machine is uneven of surface or not perfectly round causes it to engage or adhere more at one place than at another and to turn or to be turned in different directions."

The language used by Hill in this connection is almost the identical language used by Christensen.

We are of opinion that the use of the helical groove upon the long roll is a step in advance of Christensen because, as the material first placed in the groove is, by the rotation of the roll, moved toward the opposite end of the roll other gobs of material can be placed within the grooves, so that a number of marbles may be in the working at the same time. But Hill was not the inventor of the helically grooved roll, nor the first to use it in the making of spherical bodies. It is the screw of Archimedes, used two centuries before the Christian era to push boats into the water and to lift from the Nile the irrigating waters. It has been used in so many ways since that its uses and purposes have long been matters of common knowledge. Notwithstanding this, when the trial court asked plaintiff, "You claim your patent, then, is broad enough to cover any kind of a machine that has these two cylinders operating in relation to each other, with the grooves opposite to each other?" the reply was, "Yes,

for making marbles." Plaintiff's invention was not limited to a machine for making marbles. Neither was the Christensen. In machines for making spherical bodies, the helically grooved rolls appear in the Kempster patent of 1888, the Williams patent of 1903, and in Bornemann of 1901. So far as the teaching of those machines in the art of making spherical bodies is concerned, it is not considered material that they were used for making metal balls, whereas the Christensen and Hill, although broad enough to be used for other purposes, were used only for making marbles.

Nine months after the Patent Office had rejected all of Hill's claims, except claim 4 which was considered allowable, Hill, on December 4, 1913, canceled all of the disallowed claims, and in his remarks therewith stated:

"The essence of applicant's invention resides in rotating the cylinders in such manner that one moves upwardly at its working point and the other downwardly at its working point with the cylinder moving upwardly at its working point having a greater peripheral speed than the cylinder moving downwardly at its working point."

It was then urged that "for this reason it is obvious that the claims are entitled to favorable consideration." Nothing whatever was said as to the helical grooves. Thereafter, when other claims were filed, Hill urged upon the Patent Office:

"In the patent to Christensen, there are a pair of oppositely-disposed groove rolls, the grooves of one roll opposing the grooves of the opposite roll, but the function accomplished by the present invention by giving a lateral turning motion of the ball or spherical body by causing it to travel longitudinally of the rolls to thereby round the side portions is wholly lacking."

It was then that the Patent Office again took the position that there was no essential difference in action between Christensen and Hill.

As all of the elements of Hill's combination claims were old in the art of making spheres, and as he necessarily narrowed them in order to procure their allowance at all, and escape the Christensen use and the Christensen and other patents, we are of opinion that his claims must be narrowly construed.

In defendant's machine, the rolls are substantially of the same size and move at the same peripheral and angular speed, so that the material is not kept at the working point either by a larger roll or greater speed than the upturning roll. Defendant's rolls are not

oppositely arranged, as specified in the claims in suit and as shown in Figure 1 of the Hill patent, supra, but one roll is raised from a horizontal plane to a point within about 40 degrees of a perpendicular line through the diameter of the lower roll, as shown in defendant's Figure 3, supra, so that nearly the whole weight of the material being formed is upon the lower roll, and it lies against the upper roll with but a slight pressure. It seems to us clear that the arrangement used by defendant does not come within the range of equivalents allowable under the Hill invention.

The decree is reversed, with directions to dismiss the bill.